## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CAROLINA LOPEZ-YOUNG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1476 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 13 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross-Motion for Summary Judgment

## I. INTRODUCTION

Plaintiff Carolina Lopez-Young[1] brings this action on behalf of herself and her daughter

R.L. under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 (the "IDEA"),

against Defendant the District of Columbia (the "District").  Ms. Lopez appeals from an

administrative decision that, in relevant part, found that the District of Columbia Public Schools

("DCPS") denied R.L. a free appropriate public education ("FAPE") as required by the IDEA,

but declined to order the relief requested by Ms. Lopez.  Before the Court are the parties' cross-

motions for summary judgment.  *See* Pl.'s Mot. Summ. J., ECF No. 10; Def.'s Cross-Mot.

Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Cross-Mot. Summ. J."), ECF No. 13.  The

motions are ripe and fully briefed.[2]  For the reasons explained below, the Court will grant in part

---

[1] Plaintiff's filings refer to Plaintiff as Ms. Lopez.  *See, e.g.*, Compl. at 1, ECF No. 1.
The Court will do the same.

[2] *See* Pl.'s Mot. Summ. J., ECF No. 10; Def.'s Cross-Mot. Summ. J. & Opp'n Pl.'s Mot.
Summ. J. ("Def.'s Cross-Mot. Summ. J."), ECF No. 13; Pl.'s Opp'n Def.'s Cross-Mot. Summ. J.
& Reply Def.'s Opp'n ("Pl.'s Reply"), ECF No. 14; Def.'s Reply Pl.'s Opp'n Def.'s Cross Mot.
Summ. J. ("Def.'s Reply"), ECF No. 17.  The Court also granted leave for Ms. Lopez to file

and deny in part Ms. Lopez's motion and deny the District's motion.  The Court will remand this

case to the Hearing Officer with instructions to craft an appropriate award of compensatory

education and to order any assessments he determines are necessary to that process.

## II.  BACKGROUND

The Court begins by providing an overview of relevant portions of the IDEA's statutory

framework before turning to the factual background and procedural history of this case.

### A.  Statutory Framework

Under the IDEA, "every child with a disability in this country is entitled to a 'free

appropriate public education,' or FAPE."  *Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C.

Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)).  The "primary purpose" of the Act is "to ensure

that all children with disabilities have available to them a[n] . . . education that emphasizes

special education and related services designed to . . . prepare them for further education,

employment, and independent living."  *Id.* at 63 (quoting 20 U.S.C. § 1400(d)(1)(A)) (alteration

in original).  "A free appropriate public education entitles 'each child with a disability' to an

'individualized education program' that is tailored to meet his or her unique needs."  *Henry v.*

*District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (quoting 20 U.S.C. §§

1414(d)(1)(A)–(2)(A)).

The individualized education program (the "IEP") is the "primary vehicle" for

implementing the IDEA.  *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C.

Cir. 2006).  The IEP is "[p]repared at meetings between a representative of the local school

district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled

---

notice of supplemental authority following the parties' briefing.  *See* Pl.'s Notice Supplemental
Authority, ECF No. 19.

child." *Id.*  It "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.*

When the parents of a student with a disability are dissatisfied with a school district or agency's "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6), the IDEA entitles them to present their arguments in an "impartial due process hearing," *id.* § 1415(f).  If a hearing officer finds that a school district or agency denied a child a FAPE, he or she may award, among other remedies, compensatory education, which is "educational services . . . to be provided prospectively to compensate for a past deficient program." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (*quoting G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003)).  Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court.  *See id.* § 1415(i)(2).

## B.  Factual Background

R.L., the daughter of Ms. Lopez, is a minor who lives in the District of Columbia with her mother.  *See* AR 7; Compl. ¶¶ 5–6, ECF No. 1.  At the time of the due process hearing, R.L. was 16 years old and in the 8th grade.  *See* AR 7.  R.L. moved to the United States from El Salvador in the middle of the 2012-2013 school year.  *See* AR 7.  R.L. spoke limited English when she arrived in the United States, and she is not fluent at this time.  *See* AR 7.  An assessment of R.L.'s English language abilities in late 2012 found that her skills were in the lowest of five possible levels of proficiency.  *See* AR 7.  Following R.L.'s arrival in the United States, DCPS intended to place her in an 8th grade class based on her English language abilities,

but she was instead placed in a 6th grade class at Paul Public Charter School because of space limitations.[3]  *See* AR 8.

During R.L.'s earliest interactions with DCPS, Ms. Lopez was concerned that her daughter was not receiving the support she needed, and Ms. Lopez repeatedly sought to have R.L. evaluated to determine whether special education services were appropriate.  *See* AR 7–8. Specifically, an interview form created by DCPS and dated December 13, 2012 notes, "[Ms. Lopez] suggests an evaluation for special education services.  She suspects that her child suffers from learning disabilities."  *See* AR 7–8, 22.  Handwritten notes, apparently recorded by a DCPS employee in the Office of Bilingual Education during the 2012-2013 school year, similarly indicate that "[Ms. Lopez] suspects that . . . this child needs special [education] services for learning disabilities."  *See* AR 8, 26.  Ms. Lopez also made oral requests that the school perform a special education evaluation of R.L.  *See* AR 8.

During R.L.'s first year as a student at Paul Public Charter School, she received strong grades.  *See* AR 8, 36–37.  R.L.'s grades raised questions for Ms. Lopez, who had concerns about her daughter's ability to retain information and to understand math.  *See* AR 8.  The following year, R.L.'s 7th grade grades were less consistent, including some failing grades.[4]  *See* AR 9.  R.L. was required to attend summer school.  *See* AR 9.  With one exception, standardized tests administered while R.L. was in 7th grade placed her proficiency in various subjects at

---

[3] DCPS is the Local Educational Agency for Paul Public Charter School.  *See* AR 7 n.6, 17; *see also* 20 U.S.C. § 1401(19)(A) ("The term 'local educational agency' means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools . . . .").

[4] As the Hearing Officer notes, R.L.'s Progress Reports "[i]nexplicably" are inconsistent from document to document and list different grades for the same class.  *See* AR 9 n.24, 40–49. Subsequent Progress Reports appear to change grades for prior "advisories," which are periods of time equivalent to traditional school quarters.  *See* AR 40–49.

"Below Basic." *See* AR 9.  Nevertheless, R.L.'s English improved and many of her teachers gave her "very positive comments." *See* AR 9, 40–49.

Following the involvement of Ms. Lopez's counsel, DCPS acknowledged on January 22, 2015 that it had received a request to evaluate R.L.  *See* AR 9, 167.  DCPS intended to complete an evaluation of R.L. within 45 days, but the evaluation was not completed until approximately 120 days later.  *See* AR 9, 167, 474.  Counsel to Ms. Lopez requested authorization for an independent educational evaluation, but the request was denied.  *See* AR 9, 167, 466–68, 471–473.  On May 8, 2015, Samantha Shands, a certified school psychologist at DCPS, completed a Comprehensive Psychological Evaluation of R.L.[5]  *See* AR 9, 474–97.  The evaluation, which was conducted in both English and Spanish, found that R.L.'s Broad Reading, Broad Math, and Broad Written Language skills "all fell within the Very Low Range" based on the results of the Woodcock-Johnson III assessment.  *See* AR 9, 474, 495.  Similarly, the WISC-IV assessment suggested that R.L.'s intellectual functioning fell in the "extremely low range."  *See* AR 9–10, 495.  Both R.L.'s Working Memory and Perceptual Reasoning were also determined to be in the "extremely low range."  *See* AR 10, 495.

On May 19, 2015, R.L. was found eligible for special education services as a student with a "Specific Learning Disability."[6]  *See* AR 10.  At the time of the due process hearing, an IEP had not been developed for R.L.  *See id.*

---

[5] Ms. Lopez argues that Ms. Shands's report is "rife with problems."  Pl.'s Mem. P. & A. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 5, ECF No. 10-1; *see also* Pl.'s Mot. Summ. J. Ex. 1 at 5–6 ("Gurley Report"), ECF No. 10-4.

[6] The parties stipulated to this fact before the Hearing Officer.  *See* AR 10.

### C.  Administrative Proceeding and the Hearing Officer's Determination

On January 29, 2015, Ms. Lopez filed a due process complaint claiming, among other things, that DCPS denied R.L. a FAPE.  *See* AR 91–95.  Plaintiff filed an amended due process complaint on March 2, 2015.  *See* AR 210.  The amended due process complaint claimed that DCPS denied R.L. a FAPE in a variety of ways, including: (1) by refusing to evaluate R.L. for special education and related services for over two years, (2) by failing to identify R.L. as a child with a disability, and (3) by failing to provide an IEP once DCPS suspected R.L. was a child with a disability.  *See* AR 213–14.  The amended due process complaint also claimed that DCPS violated Ms. Lopez's procedural rights by refusing to provide a Prior Written Notice after Ms. Lopez initially requested an evaluation, and that Paul Public Charter School failed to communicate with DCPS regarding the fact that R.L. was suspected of being a child with a disability.  *See id.*

Among other remedies, Ms. Lopez's amended due process complaint requested that the Hearing Officer find that DCPS denied R.L a FAPE, order DCPS to "do a compensatory education study" or fund such a study, and award compensatory education.  *See* AR 215.  In the alternative, Ms. Lopez requested a bifurcated hearing that would allow the Hearing Officer to consider whether DCPS denied R.L. a FAPE in one hearing, and then hold a second hearing to determine an award of compensatory education.  *See id.*; *see also* AR 95 (requesting a bifurcated hearing in the original due process complaint).  The Hearing Officer denied the request for a bifurcated hearing, instead requiring Ms. Lopez to file a compensatory education plan seven days prior to the date the parties' disclosures were due.  *See* AR 413.  The parties' disclosures were due on May 14, 2015, meaning that Ms. Lopez's compensatory education plan was due on May

7, 2015. *See id.* As previously stated, DCPS's evaluation of R.L., was completed on May 8, 2015—the day after Ms. Lopez's compensatory education plan was due. *See* AR 9, 474–97.

The Hearing Officer's Amended Prehearing Order appears to address this timing problem by noting that Ms. Lopez's "request for compensatory education will be considered during the due process hearing, except to the extent that it related to any evaluations(s) not completed in time." AR 412 n.3. The Hearing Officer decided that "[c]ompensatory education relating to any such evaluation(s) is reserved."[7] *Id.* Nevertheless, the Amended Prehearing Order also stated that, "[w]ith regard to any remaining request for compensatory education, [Ms. Lopez's] counsel was put on notice that, at the due process hearing, [Ms. Lopez] must introduce evidence supporting the requested compensatory education." *Id.*

A hearing on the amended due process complaint was held on May 21 and May 26 of 2015 before Hearing Officer Keith L. Seat (the "Hearing Officer"). *See* AR 4. At the hearing, R.L. and Ms. Lopez testified during Plaintiff's case in chief. *See* AR 5. DCPS presented no witnesses. *See* AR 5. The Hearing Officer issued his determination on June 4, 2015. *See* AR 4–16. The Hearing Officer determined that DCPS's "failure to evaluate for two years is certain to have deprived [R.L.] of educational benefit and impeded her right to a FAPE." AR 13. Specifically, the Hearing Officer concluded that DCPS's initial "failure to evaluate [R.L.] after receiving [Ms. Lopez's] request on" December 13, 2012 constituted a denial of a FAPE. *Id.*

Despite finding that DCPS failed to provide R.L. with a FAPE, the Hearing Officer declined to award compensatory education. *See* AR 14–15. The Hearing Officer explained that the initial evaluation of R.L. "took much longer to conduct than intended" meaning that the "level of special education services needed by [R.L.] had not been determined by the time of the

---

[7] The Hearing Officer Determination includes similar language. *See* AR 6 n.3.

due process hearing." *Id.*  Thus, the Hearing Officer concluded, "compensatory education could not be awarded" at that time.  AR 15.  In light of these facts, and the fact that Ms. Lopez did not file a compensatory education plan in advance of the hearing as required by the Amended Prehearing Order, the Hearing Officer ordered that "all claims for compensatory education . . . are reserved for a further proceeding, as necessary."  AR 16.

The Hearing Officer also rejected Ms. Lopez's request for an order requiring DCPS to fund an independent compensatory education evaluation.  *See* AR 15.  The Hearing Officer explained that Ms. Lopez had "not provided any legal authority or examples in support of a Hearing Officer Ordering such action."  *Id.*  The Hearing Officer also suggested that it would not be advisable to "give such broad discretion to an individual whose selection and independence would understandably be viewed with suspicion."  *Id.*  Finally, the Hearing Officer reasoned that permitting DCPS to develop a compensatory education plan could be an impermissible delegation of the Hearing Officer's authority.  *Id.* at 15 & n.41 (citing *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005)).

### D.  Proceedings before this Court

Ms. Lopez brought this action in September 2015 pursuant to the IDEA, challenging a portion of the Hearing Officer's determination.  *See generally* Compl.  The Complaint requests as relief an award of compensatory education to remedy DCPS's denial of a FAPE, or, in the alternative, a remand to the Hearing Officer to supplement the record and award compensatory education.  *See id.* ¶¶ 19–20.  The Complaint also seeks an order directing the District to pay Plaintiff's reasonable attorneys' fees and costs and any other relief that the Court deems just. *See id.* ¶¶ 21–22.

Ms. Lopez filed a motion for summary judgment, relying on two core arguments. *See generally* Pl.'s Mot. Summ. J. First, Ms. Lopez argues that the Court should remand the case for further proceedings to determine an appropriate award of compensatory education. *See* Pl.'s Mem. P. & A. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 4–5, ECF No. 10-1. Second, Ms. Lopez argues that the Court should order DCPS to fund a "compensatory education study" that would be "tailored to provide the necessary information to meet" the D.C. Circuit's *Reid* standard for awarding compensatory education. *Id.* at 6. Ms. Lopez roots her need for the study, in part, in her argument that DCPS failed to maintain R.L.'s educational records. *Id.* 5–6. Ms. Lopez also attaches to her motion a psychological evaluation of R.L. written by Dr. Jessica Gurley, a licensed psychologist. *See* Pl.'s Mot. Summ. J. Ex. 1 ("Gurley Report"), ECF No. 10-4. The Gurley Report raises "a number of concerns with Ms. [Shands's] evaluation," and concludes, among other things, that DCPS's initial evaluation of R.L. improperly relied on an interpreter, instead of using appropriate Spanish language tests. *Id.* at 5. Dr. Gurley's evaluation indicates that R.L. "has severe difficulties understanding and speaking both English and Spanish." *Id.* at 11. The Gurley Report contains diagnoses of R.L., which include Language Disorder, Major Depressive Disorder, and Specific Learning Disorder related to mathematics. *Id.* at 12.

The District opposes Ms. Lopez's motion, and cross-moves for summary judgment. *See generally* Def.'s Cross-Mot. Summ. J. The District first argues that Ms. Lopez has not properly filed a motion to introduce the Gurley Report and that the report is not relevant to the Court's review of the Hearing Officer Determination ("HOD"). *See* Def.'s Mem. Supp. Cross Mot. Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Def.'s Mem.") at 7–8, ECF No. 13. Next, the District argues that Ms. Lopez fails to provide a legal basis for an order requiring DCPS to fund a compensatory education study and that Ms. Lopez fails to even explain "what such a study

would entail." *Id.* at 9.  The District does not object, however, "to this matter being remanded for a hearing on additional evidence regarding compensatory education." *Id.*

Following the completion of Ms. Lopez's briefing, she moved for leave to file supplemental authority.  *See generally* Pl.'s Mot. Leave File Not. Suppl. Auth., ECF No. 16. The District did not oppose the motion, *see* Def.'s Praecipe, ECF No. 18, and the Court granted Ms. Lopez leave to file supplemental authority, *see* Minute Order dated April 15, 2016.  In her filing, Ms. Lopez provides a recent opinion of the D.C. Circuit, *B.D. ex rel. Davis v. District of Columbia*, as supplemental authority.  *See* Pl.'s Not. Suppl. Auth., ECF No. 19; *see also B.D. ex rel. v. District of Columbia*, 817 F.3d 792, 794 (D.C. Cir. 2016).  Ms. Lopez draws attention to what she characterizes as "the emphasis the D.C. Circuit places on the flexibility of hearing officers to craft appropriate awards."  Pl.'s Not. Suppl. Auth. at 1.  Ms. Lopez also quotes *B.D.*, which concluded that where "further assessments are needed" to craft an award of compensatory education, "the district court or Hearing Officer should not hesitate to order them."  *Id.* at 2 (quoting *B.D.*, 817 F.3d at 800).

### III.  STANDARD OF REVIEW

Following an administrative proceeding under the IDEA, any party that is "aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court.  20 U.S.C. § 1415(i)(2).  The IDEA provides that the reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  *Id.* § 1415(i)(2)(C); *see also* 34 C.F.R. § 300.516(c).  The IDEA gives courts "broad discretion" to fashion remedies for IDEA violations.  *Florence Cnty. Sch.*

*Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993); *accord Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015).

"Although seeking judicial review of an administrative agency's decision by way of a summary judgment motion 'is permissible under the IDEA, it is not a true summary judgment procedure. Instead, the district court essentially conduct[s] a bench trial based on a stipulated record.'" *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (quoting *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993)). In a civil action challenging a hearing officer's determination under the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).

The D.C. Circuit has explained that, given the court's power to hear new evidence and to base its decision on a preponderance of the evidence standard, the "IDEA 'plainly suggest[s] less deference than is conventional' in administrative proceedings." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (alteration in original) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)); *see also id.* ("[J]udicial review under [the] IDEA is more rigorous than in typical agency cases . . . ."). Courts must afford "due weight" to the state administrative proceedings and avoid "substitut[ing] their own notions of sound educational policy for those of the school authorities they review." *Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). And, "a court upsetting the [hearing] officer's decision must at least explain its basis for doing so." *Reid*, 401 F.3d at 521 (citation omitted).

At the same time, however, "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Id.* (quoting *Kerkam*, 931 F.2d at 87); *see also M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 40 (D.D.C. 2013) ("[W]hile a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings."). Moreover, "[a] court is obligated by the IDEA to ensure that [the] relief set forth in the administrative award was appropriate" and the court "may not simply rely on the Hearing Officer's exercise of discretion." *Turner v. District of Columbia*, 952 F. Supp. 2d 31, 36 (D.D.C. 2013) (internal quotation marks and citations omitted) (quoting *Reid*, 401 F.3d at 521).  Simply put, the party challenging the hearing officer's decision "carries the burden 'of persuading the court that the hearing officer was wrong.'" *Id.* at 35 (quoting *Reid*, 401 F.3d at 521).

## IV.  ANALYSIS

The Court first considers Ms. Lopez's presentation of additional evidence in the form of the Gurley Report, before turning to its review of the Hearing Officer's determination.

### A.  Ms. Lopez's Presentation of Additional Evidence

Ms. Lopez attaches evidence not considered by the Hearing Officer—the Gurley Report—to her motion for summary judgment.  *See* Pl.'s Mem. at 5–6; Gurley Report.  Dr. Gurley completed a psychological evaluation of R.L. in coordination with Dr. Sandra Pinel-Lopez, a fluent Spanish speaker and clinical psychologist.  *See* Gurley Report at 1 & n.2.  The Gurley Report raises "a number of concerns with Ms. [Shands's] evaluation," and criticizes DCPS's initial evaluation of R.L. for relying on an interpreter and for not using Spanish language tests.  *Id.* at 5–6.  The Gurley Report also describes the results of additional testing and assessments, concluding that R.L. "has severe difficulties understanding and speaking both

English and Spanish." *Id.* at 11.  Based on the evaluation conducted by Drs. Gurley and Pinel-Lopez, the Gurley Report diagnoses R.L. with Language Disorder, Major Depressive Disorder, and Specific Learning Disorder related to mathematics.  *Id.* at 12.

The District argues that the Court should not consider the Gurley Report.  *See* Def.'s Mem. at 7–8.  First, the District argues that Ms. Lopez has failed to "first fil[e] a motion to submit additional evidence."  *Id.* at 7.  Second, the District asserts that Ms. Lopez has not demonstrated "the relevancy of this evaluation to the challenged HOD" or explained "how [the evaluation] may assist the Court in determining whether the HOD should be overturned."  *Id.* The District relies on the fact that the Gurley Report was completed "nearly six months" after the Hearing Officer released his decision, and argues that it thus has no relevance to this Court's review of the HOD.  *See id.* at 7–8.

In response, Ms. Lopez cites the IDEA and argues that the Court is *required* to hear additional relevant evidence.  *See* Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. & Reply Def.'s Opp'n ("Pl.'s Reply") at 2, ECF No. 14 ("[T]he IDEA notes that the Court '*shall* hear additional evidence at the request of a party.'" (quoting 20 U.S.C. § 1415(i)(2))).  Furthermore, Ms. Lopez argues that the Gurley Report is relevant to this case because "the hearing officer refused to order independent evaluations" for two years and DCPS's eventual evaluation was conducted in English instead of Spanish, which Ms. Lopez purports was a violation of the IDEA.  *Id.* (citing 20 U.S.C. § 1414(b)(3)(A)).  Ms. Lopez also argues the evaluation is relevant because it "highlights the inadequacies of the information available following DCPS'[s] evaluation" and "because it offers recommendations to address the symptoms of R.L.'s educational deficiencies." *Id.* at 3.  Ms. Lopez also notes that the District presents no authority for the proposition that a party is required to file a formal motion requesting leave to present additional evidence to the

13

district court.  *See id* at 2.  To the extent a motion is required, Ms. Lopez "requests that the Court treat the inclusion of Dr. Gurley's evaluation in Plaintiff's previous submission as a request to hear the additional evidence." *Id.*

First, the Court agrees with Ms. Lopez that the District has presented no authority suggesting that a formal motion is required of a party seeking to introduce additional evidence. The IDEA simply states that the district court "shall hear additional evidence at the request of the party." 20 U.S.C. § 1415(i)(2)(C)(ii).  The Court's review of the statute does not reveal any additional formal requirements, nor has the District pointed to any rule, case law, or provision of the IDEA that says otherwise.  *See* Def.'s Mem. at 7; *see also Taylor v. District of Columbia*, 770 F. Supp. 2d 105, 111 n.7 (D.D.C. 2011) (noting the lack of authority for the proposition that a party must file a separate motion when asking the Court to consider additional evidence).  At any rate, the District has had an opportunity to object to the Court's consideration of the Gurley Report, and the Court will construe Ms. Lopez's attachment of the evaluation as a "request of the party" for the Court to hear additional evidence.  20 U.S.C. § 1415(i)(2)(C)(ii).  Thus, the lack of a formal motion is no obstacle to the Court's consideration of the Gurley Report.

During a review of a hearing officer's administrative decision, the district court "shall receive the records of the administrative proceedings . . . [and] shall hear additional evidence at the request of a party."  *District of Columbia v. Masucci*, No. 13-1008, 2014 WL 329621, at *1 (D.D.C. Jan. 30, 2014) (quoting 20 U.S.C. § 1415(i)(2)(C)).  Despite the fact that the IDEA uses the word "shall," courts in this jurisdiction have discretion to accept or reject additional evidence.  *See id.*; *see also Miller ex rel. S.M. v. Bd. of Educ.*, 565 F.3d 1232, 1241 (10th Cir. 2009) (noting that "federal court proceedings must maintain the character of review and not rise to the level of a *de novo* trial" (internal quotation marks and citation omitted)); *Reid ex rel. Reid*

*v. District of Columbia*, 401 F.3d 516, 521–22 (D.C. Cir. 2005) (explaining that a district court "may" hear additional evidence and emphasizing the district court's "broad discretion"); *Fullmore v. District of Columbia*, 40 F. Supp. 3d 174, 180 (D.D.C. 2014) (noting a court's discretion to accept or reject additional evidence).

When deciding whether to accept additional evidence in this posture, "[t]he reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Masucci*, 2014 WL 329621, at *1 (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985)); *see also Carson v. District of Columbia*, No. 14-1976, 2016 WL 2962191, at *2 (D.D.C. May 20, 2016) (applying the same standard). Crucial to the Court's analysis is whether the additional evidence is relevant to the challenged decisions of the hearing officer. *See Miller*, 565 F.3d at 1241.

The only issues currently before the Court are whether the case should be remanded to the Hearing Officer and whether the Court should require DCPS to conduct a compensatory education study. Ms. Lopez's argument that a compensatory education study is necessary relies, at least in part, on her assertion that the Hearing Officer relied on DCPS's purportedly faulty evaluation and that DCPS failed to maintain R.L.'s educational records. *See* Pl.'s Mem at 5–6. The Gurley Report criticizes the DCPS evaluation completed by Ms. Shands and reviews available educational records. *See* Gurley Report at 1–2, 4–6. Thus, the Court finds that the Gurley Report is at least relevant to the issues in this case. Furthermore, the Court finds that the limited evidence offered by Ms. Lopez is "merely supplemental to the administrative

record." *Miller,* 565 F.3d at 1241. The Court's consideration of the Gurley Report will not threaten "the character of review" or lead to "a *de novo* trial." *Id.* Thus, the Court will consider the additional evidence to the extent it is necessary to resolve the issues in this case.[8]

### B. Ms. Lopez's Request for a Remand

Next, the Court considers Ms. Lopez's request for a remand. In light of the parties' agreement and this Court's authority to remand for a determination of appropriate compensatory education, this case will be remanded to the Hearing Officer for that purpose.

Ms. Lopez's Complaint seeks an order for compensatory education, or, in the alternative, for a remand "to the hearing office to supplement the record and award R.L. compensatory education services." Compl. ¶¶ 19–20. Ms. Lopez's motion for summary judgment, however, does not argue that the Court should determine an award of compensatory education. Instead, Ms. Lopez requests only "that this Court remand this case to the Office of Dispute Resolution so that the hearing officer may award compensatory education." Pl.'s Mem. at 5. The District "does not object to a remand." Def.'s Mem. at 3; *see id.* at 9; *see also* Pl.'s Reply at 1 (noting the "District's acquiescence to Ms. Lopez's proposed remand"). The parties thus agree that remand is appropriate in this case.

The D.C. Circuit has held that a district court may remand for the purposes of considering an award of compensatory education following a finding that a child was denied a FAPE. *See*

---

[8] The Court notes that, although the reports were relevant for different reasons, other courts in this district have allowed parties to present psychological evaluations that were not first considered by the hearing officer. *See, e.g., Carson,* 2016 WL 2962191, at *6 ("[T]the psychiatric evaluation could show that the student suffered from such severe emotional and behavioral disorders that anyone who interacted with him would have suspected a disability."); *Masucci,* 2014 WL 329621, at *2 (finding that a subsequent psychological evaluation "relate[s] to this question of whether [the student's] IEPs were appropriate and which educational placement is appropriate").

*Reid*, 401 F.3d at 526; *see also Branham ex rel. Branham v. Gov't of D.C.*, 427 F.3d 7, 13 (D.C. Cir. 2005) (holding that "*Reid* permits the district court either to take supplemental evidence or to return the case to the hearing officer").  District courts in this circuit frequently remand to the hearing officer for further proceedings to supplement the record and consider whether an award of compensatory education is appropriate.  *See, e.g.*, *Joaquin v. Friendship Pub. Charter Sch.*, No. 14-1119, 2015 WL 5175885, at *10 (D.D.C. Sept. 3, 2015) (remanding to the hearing officer to craft an award of compensatory education); *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 277 (D.D.C. 2011) (same); *Walker v. District of Columbia*, 786 F. Supp. 2d 232, 239 (D.D.C. 2011) (same); *Thomas ex rel. A.T. v. District of Columbia*, 407 F. Supp. 2d 102, 116 (D.D.C. 2005) (same).  To be sure, this Court has discretion to hold a hearing, hear additional evidence, and determine the proper relief on its own.  *See Branham*, 427 F.3d at 13 ("[I]n light of the educational harms [the student] has already suffered, we encourage the district court to undertake the evidentiary hearing itself in order to minimize the potential for further delay."); *see also Gill ex rel. W.G. v. District of Columbia*, 751 F. Supp. 2d 104, 114 (D.D.C. 2010) ("[T]he Court will invite [plaintiffs] to request an evidentiary hearing concerning the appropriate compensatory education due to [the student.]").  But in this case, neither party has argued that the Court should exercise that discretion.

In light of the parties' agreement that the case should be remanded for further proceedings to consider an award of compensatory education and the Court's authority to do so, the Court finds that remand is appropriate.  Thus, the Court will remand this case to the Hearing Officer "to conduct the 'fact-specific exercise of discretion' required by *Reid*, and to craft an award that 'aim[s] to place [the student] in the same place [she] would have occupied but for the

school district's violations of [the] IDEA.'"[9]  *Henry v. District of Columbia*, 750 F. Supp. 2d 94,

99 (D.D.C. 2010) (first and last alteration in original) (quoting *Reid*, 401 F.3d at 518).

### C.  Ms. Lopez's Request for a Compensatory Education Study

Remanding this case to the Hearing Officer does not fully resolve the issues raised by

Ms. Lopez in her motion for summary judgment.  Following the due process hearing, the

Hearing Officer rejected Ms. Lopez's request for a compensatory education study, finding that

Ms. Lopez had "not provided any legal authority or examples in support of a Hearing Officer

ordering such action."  AR 15.  Ms. Lopez argues that the Hearing Officer erred when he refused

to order a compensatory education study, *see* Compl. ¶ 17, and she asserts that this Court should

"require DCPS to fund an educational evaluation at market rates to create a sufficient record

upon which an award of compensatory education may be based," Pl.'s Mem. at 7.  The District

argues that Ms. Lopez "has failed to cite any authority that would support requiring the District

to fund this so-called 'compensatory education study.'"  Def.'s Mem. at 9.

For the reasons explained below, the Court finds that the Hearing Officer erred when he

concluded that he lacked the authority to order the study requested by Ms. Lopez.  However, the

Court does not find that Ms. Lopez has shown that such a study is necessary at this time.

Instead, the Court will remand to the Hearing Officer with instructions to order the assessments

that he finds are necessary, if any, to craft an appropriate award of compensatory education.

### 1.  Compensatory Education

When a school district denies a child a FAPE, courts have "broad discretion" to fashion a

remedy.  *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993) (citation

---

[9] The Court's decision to remand is also consistent with the HOD, which determined that "all claims for compensatory education for [R.L.] from 12/13/12 . . . through 1/22/15 . . . are reserved for a further proceeding, as necessary."  AR 16.

omitted); *accord Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015).   "That

equitable authority . . . must include the power to order compensatory education."   *Boose*, 786

F.3d at 1056 (citing *Reid*, 401 F.3d at 522–23).   Compensatory education is a remedy in the form

of educational programs that "make up for prior deficiencies."   *Reid,* 401 F.3d at 522.   An award

of compensatory education must follow a "fact-specific" inquiry and be "reasonably calculated

to provide the educational benefits that likely would have accrued from special education

services the school district should have supplied in the first place."   *Id.* at 524.   "To fully

compensate a student, the award must seek not only to undo the FAPE denial's affirmative harm,

but also to compensate for lost progress that the student would have made."   *B.D. ex rel. Davis v.*

*District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016).

 The Supreme Court has repeatedly emphasized that IDEA relief depends on "equitable

considerations."   *Reid*, 401 F.3d at 522 (quoting *Carter*, 510 U.S. at 15–16).   Courts and hearing

officers are reminded that "[t]he essence of equity jurisdiction" is "to do equity and to mould

each decree to the necessities of the particular case," meaning that "[f]lexibility rather than

rigidity" should be the guide.   *Id.* at 523–24 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329

(1944)).

## 2.   Authority to Order Additional Assessments

 Ms. Lopez supplements her argument with a recent decision of the D.C. Circuit that is

instructive here.   *See* Pl.'s Not. Suppl. Auth., ECF No. 19.   In *B.D.*, the D.C. Circuit explained

that "compensatory education awards require a 'flexible approach' tailored to the facts of each

case."   *B.D.*, 817 F.3d at 799 (quoting *Reid*, 401 F.3d at 524).   This flexible approach requires

careful fact-finding and analysis, and the court acknowledged the "difficulty inherent in figuring

out both what position a student would be in absent a FAPE denial and how to get the student to

that position." *Id.*  A court must ensure that it has the facts necessary to craft an award of

compensatory education:

> In carrying out the complicated work of fashioning such a remedy, the district
> court or Hearing Officer should pay close attention to the question of assessment.
> Assessments sufficient to discern [the student's] needs and fashion an appropriate
> compensatory education program may now exist.  But it may also well be that
> further assessments are needed.  If so, the district court or Hearing Officer should
> not hesitate to order them, including, if appropriate on the updated record,
> assessment at a residential treatment facility.

*Id.* at 800.

Although it was decided before *B.D.*, another case, *Phillips ex rel. T.P. v. District of

Columbia*, provides a useful example of a hearing officer ensuring that she had access to the

assessments necessary to craft a compensatory education award.  In *Phillips*, the district court

remanded to the hearing officer with instructions to determine an appropriate award of

compensatory education.  *See* 736 F. Supp. 2d 240, 250 (D.D.C. 2010).  On remand, the hearing

officer "ordered an evaluation of [the student] by specialists 'who possess knowledge and

expertise in childhood development and would be able to ascertain how the lack of early

intervention impacted [the student] or any student with similar disabilities.'"  Order, *Phillips ex

rel. T.P. v. District of Columbia*, No. 09-0987, ECF No. 24 at 1 (D.D.C. Dec. 21, 2010)

("*Phillips* Clarification Order") (quoting the hearing officer's Interim Order).  Notably, the

hearing officer ordered DCPS to pay for the independent evaluation that she ordered.  *See* Def.'s

Mem. P. & A. Supp. Def.'s Mot. Order Clarification, *Phillips ex rel. T.P. v. District of Columbia*,

No. 09-0987, ECF No. 23 at 6 (D.D.C. Dec. 15, 2010).  The District argued that the hearing

officer's order overstepped her authority, and sought clarification from the district court.  *See

generally id.*  The district court determined that the hearing officer's order was appropriate,

explaining that:

> To ensure that the plaintiff has been provided an adequate opportunity to supplement the record with such evidence, the Hearing Officer must be free to order any relief that she believes would assist the plaintiff in developing her case for an award of compensatory education [ . . . . ]  Inherent in the Hearing Officer's authority to modify the [plaintiff's proposed] award is to order the parties to provide additional information that will assist her in determining whether a modification of the proposed compensatory award is appropriate, which certainly would include ordering an evaluation that would help "determine how the failure of [the school district] to . . . provide [the student] services from August 2004 until February 2006 contributed to [his] current deficits."  The ordering of an additional evaluation is, therefore, consistent with the Court's directives . . . .

*Phillips* Clarification Order at 2–3 (third and fifth modifications in original) (quoting the hearing officer's Interim Order).

The parties disagree on the significance of *Phillips*.  Ms. Lopez argues that she simply "requests the same relief that was afforded [in that case] when the hearing officer did not have sufficient information to craft an award in line with *Reid's* requirements."  Pl.'s Reply at 5.  The District argues that this case is "distinct" because *Phillips* involved a "hearing officer's clear order for a compensatory education evaluation—a far cry from upholding an 'independent compensatory study' as [Ms. Lopez] seeks here."  Def.'s Reply at 2.  Although the Court fails to see an obvious difference between a "compensatory education evaluation" and an "independent compensatory study," the Court is sympathetic to the District's argument that Ms. Lopez has not "provided a detailed explanation as to what such a study would entail."  *Id.*

Ms. Lopez has not explained in detail what would be required of her proposed independent compensatory education study.  The Complaint only mentions the study in passing.  *See* Compl. ¶ 17.  Ms. Lopez's motion for summary judgment provides little additional information.  There, she ties her request to DCPS's failure to maintain R.L.'s records, arguing that "when a school district fails to maintain the educational records, the school district should fund an independent compensatory education study tailored to provide the necessary information to meet the *Reid* standard."  Pl.'s Mem. at 6; *see also id.* at 7 ("It logically follows that when

DCPS loses educational records, they should fund the necessary studies and evaluations that can replace the information from those records."). Ms. Lopez's reply is no more illuminating. *See* Pl.'s Reply at 3 ("The most appropriate remedy for the District's failure to maintain education records would be to require DCPS to fund an independent evaluation to determine the appropriate amount and type of compensatory education that will meet the *Reid* standard."). Ms. Lopez has not identified who she believes would be qualified to conduct the study, what sort of materials or assessments would be relevant, or how the study would bolster the Hearing Officer's application of the *Reid* standard. Nor does Ms. Lopez explain the relevance of any particular missing records, how the absence of those records prevents her from presenting a proposed compensatory education award, or how the study would substitute for the missing records if the materials are truly lost. Finally, Ms. Lopez does not address the role the Gurley Report might play in crafting an award for compensatory education, or how her proposed study would differ from that evaluation of R.L.[10]

For these reasons, the Court agrees with the District's assessment that Ms. Lopez's request "remains vague and undefined." Def.'s Reply at 2; *see also Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 277 n.5 (D.D.C. 2011) ("[T]he record is devoid of any description of the particular assessment that Wilson requests, and fails to explain how or why that assessment will identify the amount and type of services that would [provide compensatory education]."). Thus, the Court does not find that it would be appropriate to order a compensatory education study at this time.

---

[10] Indeed, as the District points out, Ms. Lopez has access to the educational records included in the Administrative Record, and those records constituted part of the foundation for the Gurley Report. *See* Def.'s Mem. at 9.

### 3.  Instructions to the Hearing Officer

The Hearing Officer rejected Ms. Lopez's request for a compensatory education study, finding that Ms. Lopez had "not provided any legal authority or examples in support of a Hearing Officer ordering such action."  AR 15.  For the reasons explained above, the Court finds that Ms. Lopez has carried her burden of "persuading the court that the hearing officer was wrong" on that point.  *Reid*, 401 F.3d at 521.

A Hearing Officer has broad discretion to fashion a remedy where he finds that a school district has denied a child a FAPE.  *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993); *accord Boose v. District of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015). Sitting in equity, a Hearing Officer's authority is flexible and case-specific.  *See B.D.*, 817 F.3d at 799.  In particular, a Hearing Officer "should pay close attention to the question of assessment" and "should not hesitate to order" additional assessments, if necessary.  *Id.* at 800. Courts have approved of hearing officers ordering similar assessments, and the Hearing Officer here was mistaken when he concluded that he did not have the same authority.  *See Phillips* Clarification Order at 2–3.

Although the Hearing Officer has the authority to order additional assessments, for the reasons explained above, the Court does not find that Ms. Lopez has shown that the compensatory education study she seeks is necessary at this time.  Instead, the Hearing Officer should consider Ms. Lopez's arguments, and any opposition from the District, on remand in the first instance.  On remand, the Hearing Officer should consider Ms. Lopez's request for compensatory education and for a compensatory education study in a manner consistent with D.C. Circuit precedent and the guidance that the Court has provided here. Considering the record before him, including the Gurley Report and other new evidence submitted by the parties, the

Hearing Officer has the authority to order additional assessments, if he finds that they are necessary to his efforts to craft an appropriate compensatory education award.[11]  The Hearing Officer should also assess whether the existing reports written by Ms. Shands and Dr. Gurley are now outdated, thus requiring updated assessments.  Finally, in considering the equities of the remedy it crafts, the Hearing Officer should consider that the remedy is designed to correct a violation of law by DCPS and that Ms. Lopez is indigent and may not be able to afford the costs of any further assessments.

## V.  CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion for Summary Judgment (ECF No. 10) and **DENY** Defendant's Cross-Motion for Summary Judgment (ECF No. 13).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 29, 2016                                        RUDOLPH CONTRERAS
                                                                                  United States District Judge

---

[11] The Hearing Officer may also order DCPS to fund any necessary studies, if he finds that such an order would be equitable.